UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
                                     :
SHARON MABRY                         :      05 Civ. 8133 (JSR) (JCF)
                                     :
              Plaintiff,             :
                                     :           MEMORANDUM
         - against -                 :_____ AND  ORDER
                                     :
THE NEW YORK CITY DEPARTMENT OF      :
CORRECTIONS, MICHELLE MACK, WARDEN;  :
NEW YORK STATE DEPARTMENT OF         :
CORRECTIONS, ADA PEREZ,              :
SUPERINTENDENT,                      :
                                     :
              Defendants.            :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     Sharon Mabry, proceeding <u>pro</u> <u>se</u>, brings this action pursuant
to 42 U.S.C. § 1983, alleging that unsanitary conditions at two
correctional facilities where she was incarcerated caused her to
contract the Hepatitis C virus and violated her constitutional
rights.  Discovery has closed, and the plaintiff now moves to amend
her complaint to (1) remove five defendants, (2) name 21 new
supervisory defendants, and (3) attach new declarations from other
inmates to support her claims.  The defendants oppose the motion to
the extent that Ms. Mabry seeks to add new defendants on grounds
that (1) the plaintiff's claims against the new defendants are
time-barred, (2) the plaintiff cannot allege personal involvement
of the new defendants, and (3) amendment would cause undue delay
and prejudice.  For the reasons discussed below, the plaintiff's
motion is granted in part and denied in part.

Background

Ms. Mabry was incarcerated at the Rose M. Singer Center for Women ("RMSC"), a facility operated by the New York City Department of Corrections ("NYC DOC") on Rikers Island.  (First Amended Complaint ("FAC"), Statement of Claim ("FAC Statement"), at 1).  On January 13, 1997, she underwent routine medical screening, tested negative for Hepatitis A and B, and tested within the "normal range" for Hepatitis C.  (FAC Statement at 1).  The plaintiff remained incarcerated at the RMSC for approximately three years. She alleges that during the course of her incarceration she observed unsanitary conditions at the RMSC medical clinic and the beauty shop.  Specifically, she asserts that contaminated material or equipment was not properly sterilized or disposed of.  (FAC Statement at 1-2).

On March 8, 2000, Ms. Mabry was transferred to the Bedford Hills Correctional Facility ("BHCF"), a facility operated by the New York State Department of Correctional Services ("DOCS") in Westchester County.  (FAC Statement at 2).  Upon arrival at BHCF, the plaintiff was again given routine medical tests.  This time, the test results indicated that she had been exposed to the Hepatitis B virus, but she was not notified of this finding.  (FAC Statement at 3).  The plaintiff alleges that, as at RMSC, she observed unsanitary conditions at BHCF.  She suggests that the

failure to comply with health guidelines created an unreasonable risk of the spread of communicable disease in the reception/intake area, medical clinics, beauty shop ("COSMO"), and mess hall. (FAC Statement 2-4).

In May of 2004, a routine blood test revealed that Ms. Mabry had "abnormal liver enzymes." (FAC Statement at 4). Follow-up tests indicated that she had been exposed to Hepatitis A, B, and C. (FAC Statement at 4). However, she has not developed any infection with Hepatitis A or B, and only alleges harm resulting from infection with the Hepatitis C virus. (FAC Statement at 4, 5). In October of 2004, a liver biopsy showed that Hepatitis C had damaged 25% of Ms. Mabry's liver. (FAC Statement at 4). She is currently undergoing treatment for the Hepatitis C infection and alleges that the medication has caused severe side effects, including dizziness, fainting, anemia, and thyroid inflammation. (FAC Statement at 5). The plaintiff currently remains incarcerated at BHCF.

On August 24, 2005, Ms. Mabry commenced this action against Michelle Mack, the NYC DOC, and Ada Perez, alleging violations of her Eighth Amendment right to be free from prison conditions that present an unreasonable risk of serious physical harm and her Fourteenth Amendment right to due process. The Complaint was initially filed in the Eastern District of New York; however, the Honorable Lois Bloom, United States Magistrate Judge, determined that the Southern District of New York was the more appropriate

venue and transferred the case here.  (Order dated Sept. 9, 2005, Mabry v. New York City Department of Corrections, 05-CV-4188). After the time for the plaintiff to serve the Complaint was extended on two occasions, defendants Michelle Mack and the NYC DOC were served on or about October 16, 2006.  Those defendants filed an Answer on December 1, 2006.

Meanwhile, on September 27, 2006, the plaintiff filed an Amended Complaint that removed the two individual defendants[1] and named 13 new employees of the City and State and a number of John/Jane Doe wardens of RMSC who had been employed by the NYC DOC during the time period that the plaintiff was incarcerated there. (FAC, attachment to 2nd page).  The 13 new named defendants included four City employees from RMSC (a deputy of security, two corrections officers, and a director of the medical clinic) and nine State employees from BHCF (a superintendent, five deputies,

---

[1] The plaintiff also did not name the NYC DOC in the Amended Complaint, but indicated in a telephone conference on March 8, 2007, that she did not intend to remove it as a defendant in this action.  To the extent that the plaintiff intends to assert claims against NYC DOC, the NYC DOC is a non-suable entity and the proper defendant would be the City itself.  See  N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the [C]ity of New York and not in that of any agency, except where otherwise provided by law."); Hyde v. Arresting Officer Caputo, No. 98 Civ. 6722, 2001 WL 521699, at *2 (E.D.N.Y. May 11, 2001); Morris v. New York City Police Department, No. 98 Civ. 6607, 1999 WL 1201732, at *3 (S.D.N.Y. Dec. 14, 1999).  At any rate, since the plaintiff did not name either NYC DOC or the City as a defendant in her Second Amended Complaint, neither will be treated as a defendant in this action.

the director of the medical clinic, a sergeant, and the supervisor
on site at COSMO).  (FAC, attachment to 2nd page).  Six of the new
defendants were served with the amended summons and complaint, and
they filed an Answer to that complaint on January 3, 2007.[2]

At a conference on January 30, 2007, the plaintiff requested
the names of the wardens and supervisors of the medical clinic,
intake area, and beauty shop at RMSC.  (Letter of Steven D. Weber
dated March 8, 2007 ("Weber 3/8/07 Letter"), attached as Exh. G to
Declaration of Steven D. Weber dated Dec. 28, 2007 ("Weber 12/28/07
Decl.")).  Counsel for the City defendants responded in part to
this request on March 8, 2007, but Ms. Mabry apparently never
received the City's letter.  (Weber 3/8/07 Letter; Plaintiff's
Affirmation in Answer to City's Defendant's [sic] Memorandum of Law
in Opposition to Leave Motion to Amend Her Second Complaint dated
Jan 15, 2008 ("Mabry Reply Aff."), ¶¶ 24-25; Memorandum of Officer
D. Harris dated Jan. 4, 2008 and Legal Mail Log, attached as Exh.
J to Declaration of Sharon Mabry dated Jan. 15, 2008 ("Mabry
1/15/08 Decl.")).  On July 26, 2007, the plaintiff renewed her
request for the names of the wardens of administration, programs,
and security for the period from January 1997 to March 2000.
(Letter of Sharon Mabry dated July 26, 2007, attached as Exh. A to

---

[2] These six defendants were Dr. Gail Bailey, Sandra Coon, Dr.
Lori Goldstein, Mary Ann Hughes, Cheree Lemmerman, and Elaine Lord.
Of those, only four were subsequently named in the Second Amended
Complaint -- Dr. Bailey, Dr. Goldstein, Ms. Lemmerman, and Ms.
Lord.

Mabry 1/15/08 Decl.).  The City responded to this request on August
3, 2007 with the names of the program wardens during the relevant
time period.  (Letter of Steven D. Weber dated Aug. 3, 2008 ("Weber
8/3/08 Letter"), attached as Exh. B to Mabry 1/15/08 Decl.).  The
City also represented that it was unable to locate information
concerning the identities of  wardens of administration and
security.  (Weber 8/3/08 Letter at 2).  The plaintiff then renewed
her request for the names of the medical director of the RMSC
clinic, and the City provided that information for the period of
January 1997 to March 2000 on October 24, 2007.  (Letter of Steven
D. Weber dated Oct. 24, 2007, attached as Exh. G to Mabry 1/15/08
Decl.).  The State provided the plaintiff with names of the deputy
superintendents for administration, programs, and security at BHCF
on August 7, 2007.  (Letter of Steven Schulman dated Aug. 7, 2007,
attached as Exh. A to State DOCS Defendants' Memorandum of Law in
Opposition to Motion to Amend the Complaint ("DOCS Memo.")).

On November 9, 2007, the plaintiff moved for leave to file a
Second Amended Complaint ("SAC").  (Plaintiff's Motion to Amend the
Complaint dated Nov, 9, 2007; Affirmation of Sharon Mabry dated
Dec. 13, 2007 ("Mabry 12/13/07 Aff."), ¶¶ 1-3). The Second Amended
Complaint removed one City defendant who had been named in the
First Amended Complaint (a deputy of security) and four of the
individual State defendants who were named in the First Amended
Complaint (three deputies and the COSMO supervisor).  It also named

6

fifteen new RMSC wardens and wardens' of programs who had
previously been designated Jane/John Doe wardens in the First
Amended Complaint.  Finally, the Second Amended Complaint named
three new City defendants (the beauty shop supervisor and two
medical directors of the RMSC clinic) and three new State
defendants (all deputies of administration).  (SAC, attachment to
1st page).  I granted a request by the defendants to hold the
deadline for dispositive motions in abeyance until a determination
could be made on the motion to amend.  (Order dated Nov. 27, 2007).
Counsel for the City defendants and counsel for the State
defendants then opposed the motion, and the plaintiff made several
submissions in reply.

Discussion

    A.   Standard of Review

A motion to amend is generally governed by Rule 15(a) of the
Federal Rules of Civil Procedure, which states that "[t]he court
should freely give leave when justice so requires." Fed. R. Civ.
P. 15(a); see also Oneida Indian Nation of New York v. City of
Sherill, 337 F.3d 139, 168 (2d Cir. 2003), rev'd on other grounds,
544 U.S. 197 (2005).  Notwithstanding the liberality of the rule,
"it is within the sound discretion of the court whether to grant
leave to amend." John Hancock Mutual Life Insurance Co. v. Amerford
International Corp., 22 F.3d 458, 462 (2d Cir. 1994); accord Krumme
v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998).

Regarding the use of this discretion, the Supreme Court has stated:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave should . . . be freely given.

Foman v. Davis, 371 U.S. 178, 182 (1962) (internal quotation marks omitted).

In this case, Ms. Mabry seeks to amend her complaint to name certain defendants who were previously designated as Jane/John Does and to add certain new defendants.  If a proposed amendment adds new parties, then Rule 21 governs.  Momentum Luggage & Leisure Bags v. Jansport, Inc., No. 00 Civ. 7909, 2001 WL 58000, at *1 (S.D.N.Y. Jan. 23, 2001).  That rule states that a party may be added to an action "at any time, on just terms."  Fed. R. Civ. P. 21.  In deciding whether to permit joinder, courts apply the "same standard of liberality afforded to motions to amend pleadings under Rule 15."  Soler v. G & U, Inc., 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (quoting Fair Housing Development Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972); accord Smith v. P.O. Canine Dog Chas, No. 02 Civ. 6240, 2004 WL 2202564, at *12 n.11 (S.D.N.Y. Sept. 28, 2004); Momentum Luggage, 2001 WL 58000, at *2; Clarke v. Fonix Corp., No. 98 Civ. 6116, 1999 WL 105031, at *6 (S.D.N.Y. March 1, 1999)).  Thus, joinder will be permitted absent undue delay, bad faith, prejudice, or futility.

8

A.   Statute of Limitations

The City defendants argue that the plaintiff's amendment of the complaint to add new RMSC defendants Hector Eugui, Elizabeth Heard, Christy Sanchez, Ruth Figueroa, Glen Sylvester, Jacqueline Andrews, Steven Conry, Peter Panagi, Mary Ellen Gallagher, Thomas Holley, Steven Wilson, Frances Rosato, Freda Holmes, Vickie Gunther, Sandra Langston, John Nance, Dr. Maria Bouzy, and Dr. Dyer is futile because her claims against them are time-barred.[3,4] (City Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Amend Her Complaint ("NYC DOC Memo.") at 1).  The plaintiff contends that she was not previously able to name the new defendants because she did not know their identities, and that she diligently sought to identify them for the purpose of amending her complaint.  (Mabry Reply Aff. at 11-13).  She notes that she did not receive the list of names of the RMSC wardens until August 3, 2007, and did not receive names of the medical directors of the

---

[3] Five of the new RMSC defendants -- Hector Eugui, Elizabeth Heard, Christy Sanchez, Glen Sylvester, and Jacqueline Andrews -- are named as wardens of RMSC.  Nine of the new defendants -- Steven Conry, Peter Panagi, Mary Ellen Gallagher, Thomas Holley, Steven Wilson, Frances Rosato, Freda Holmes, Vickie Gunther, and Sandra Langston -- are named as wardens of programs.  Ruth Figueroa is named as a warden and as a warden of programs.  John Nance is named as the supervisor of the beauty shop.  Drs. Maria Bouzy and Dyer are named as directors of the medical clinic.

[4] Counsel for the State defendants, though he alludes to a possible timeliness issue (DOCS Memo. at 2 n.2), does not explicitly oppose amendment to add new State defendants Raymond Morgan, Maryanne Hughes, and Dave Casterline on statute of limitations grounds.

RMSC clinic until October 24, 2007.  (Mabry Reply Aff. at 11).

The statute of limitations for a Section 1983 action in New York is three years.  See Jackson v. Suffolk County Homicide Bureau, 135 F.3d 254, 256 (2d Cir. 1998); Jaghory v. New York State Department of Education, 131 F.3d 326, 331 (2d Cir. 1997); Bristow v. Smith, 03 Civ. 2663, 2003 WL 21437005, at *1 (S.D.N.Y. June 18, 2003).  Although New York law provides the limitations period, accrual of the federal cause of action is a matter of federal law. Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001).  Under federal law, a Section 1983 cause of action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of [her] action."  Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002) (quoting Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980)).  The plaintiff first learned that she had abnormal liver enzymes in May of 2004.  (FAC Statement at 4).  The defendants do not dispute that the original complaint in this action was filed within the statute of limitations. Rather, they contend that the plaintiff's cause of action against the new defendants expired in May 2007, six months before she submitted her motion to amend.[5]  Accordingly, the plaintiff may not add the new

---

[5] Although the plaintiff was aware that her blood tests were abnormal in May of 2004, she first obtained a positive test result for Hepatitis C in August 2004 and did not learn that the infection had caused substantial damage to her liver until October 2004. (FAC Statement at 4).  The date on which the plaintiff knew or had reason to know of her injury, then, is subject to possible dispute. However, because the plaintiff did not file her motion to amend

10

defendants unless her claim relates back to the date of her original claim under Rule 15 of the Federal Rules of Civil Procedure.

An amendment that adds or changes the name of a defendant "relates back to the date of the original pleading" if (1) the claim arises out of same conduct, transaction, or occurrence previously set forth, (2) within 120 days of original filing date, the defendant to be brought into the action "received such notice of the action that it will not be prejudiced in defending on the merits," and (3) the defendant "knew or should have known that the action would have been brought against it but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(B)-(c)(1)(C).  See also VKK Corp. v. National Football League, 244 F.3d 114, 128 (2d Cir. 2001); Byrd v. Abate, 964 F. Supp. 140, 144-45 (S.D.N.Y. 1997); Harris v. Butler, No. 91 Civ. 6352, 1996 WL 403053, at *1 (S.D.N.Y. 1996).

With respect to the first requirement, there is no question that Ms. Mabry's claims against the new defendants  arise out of the same conduct set forth in the First Amended Complaint.  As to the second requirement, whether the new individual defendants had notice, "the court can impute [constructive notice] of a lawsuit to a new defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as

---

until November 2007, the exact date of accrual is not material.

there is some showing that the attorney knew the additional defendants would be added to the existing suit." Muhammad v. Pico, No. 02 Civ. 1052, 2003 WL 21792158, at *20 (S.D.N.Y. Aug. 5, 2003) (finding that DOCS employee represented by Attorney General was on constructive notice of lawsuit because Attorney General's office was defending other employees and knew that claim could be brought against unnamed employee); see also Campbell v. Coughlin, No. 99 Civ. 0697, 1994 WL 114831, at *2 (S.D.N.Y. March 31, 1994). There is no dispute that Corporation Counsel of the City of New York was aware of Ms. Mabry's lawsuit, having answered the Complaint and First Amended Complaint on behalf of the initial City defendants. Corporation Counsel also learned at least as early as at the January 30, 2007 conference that the plaintiff sought the identities of supervisory personnel at RMSC to add them as defendants. The individuals that Corporation Counsel eventually identified in response to the plaintiff's discovery request are the same individuals that the plaintiff seeks to join.

The plaintiff is not, however, able to meet the third requirement for relation back under federal law -- that the failure to name the new defendants earlier is the result of a mistake. The Second Circuit has made clear that Rule 15(c)(1)(c) does not permit the addition of new parties where the plaintiff originally failed to name them merely because she did not know their identities. See Barrow v. Wethersfield Police Department, 66 F.3d 466, 470 (2d

Cir.1995), <u>as modified</u>, 74 F.3d 1366 (2d Cir. 1996) ("[T]he failure
to identify individual defendants when the plaintiff knows that
such defendants must be named cannot be characterized as a
mistake."); <u>accord</u> <u>Johnson v. Barney</u>, No. 04 Civ. 10204, 2007 WL
2667134, at *1 (S.D.N.Y. Aug. 30, 2007); <u>Hickey v. City of New
York</u>, No. 01 Civ. 6506, 2004 WL 736896, at *3 (S.D.N.Y. Apr. 5,
2004). This prohibition applies with equal force when an action is
brought by a <u>pro se</u> litigant and unidentified defendants are named
as "John Does" within the statute of limitations. <u>See</u> <u>Tapia-Ortiz
v. Doe</u>, 171 F.3d 150, 151-52 (2d Cir. 1999).

Nevertheless, Rule 15 also provides that relation back may be
permitted if "the law that provides the applicable statute of
limitation allows [it]." Fed. R. Civ. P. 15(c)(1)(A). If the
applicable state law "affords a more forgiving principle of
relation back than the one provided in [the federal rule], it
should be available to save the claim." <u>Murphy v. West</u>, ____ F.
Supp. 2d _____, 2008 WL 339216, at *3 (W.D.N.Y. Feb. 6, 2008)
(quoting <u>DeRienzo v. Harvard Industries, Inc.</u>, 357 F.3d 348, 353
n.8 (3d Cir. 2004)); <u>see also</u> Advisory Committee Notes on 1991
Amendment to Fed. R. Civ. P. 15; <u>Laureano v. Goord</u>, 06 Civ. 7845,
2007 WL 2826649, at *5 (S.D.N.Y. Aug. 31, 2007); <u>Lieber v. Village
of Spring Valley</u>, 40 F. Supp. 2d 525, 532 (S.D.N.Y. 1999); <u>cf.
Sepulveda v. City of New York</u>, No. 01 CV 3117, 2003 WL 22052870, at
*3 n.4 (S.D.N.Y. Sept. 2, 2003) ("The Second Circuit has not

directly addressed the issue of whether Rule 15(c)(1)[(A)] applies to Section 1983 actions, and if so, whether New York law would allow relation back in the John Doe defendant context.").

Because the three-year statute of limitations in this case is provided by New York law, it is appropriate to also analyze the case under state law. Although the language of the relation back test under state law mirrors that of Rule 15(c),[6] the "mistake" requirement under New York law is more forgiving than the federal rule. See, e.g., Beck v. Consolidated Rail Corp., 394 F. Supp. 2d 632, 640 (S.D.N.Y. 2005) (noting that the mistake requirement "will be satisfied [so long as] the omission . . . was not an attempt to secure some tactical advantage in the litigation"); Blakeslee v. Royal Insurance Co. of America, No. 93 Civ. 1633, 1998 WL 209623, at *6 (S.D.N.Y. April 29, 1998) (allowing relation back where plaintiff did not previously name new defendant despite having some idea of his participation because plaintiff did not act intentionally or in bad faith); but see Sepulveda, 2003 WL 22052870, at *3 n.4 (collecting cases for proposition that "[d]istrict courts in this circuit have found that New York's

---

[6] The New York Court of Appeals has held that an amendment will generally relate back if (1) the new claim arises out of the same conduct, transaction, or occurrence set forth in the original complaint, (2) the new defendant is "united in interest" with the existing defendants such that he would have notice of the lawsuit and will not be prejudiced in his/her defense, and (3) the failure to name the proper party previously was the result of an excusable mistake. Buran v. Coupal, 87 N.Y.2d 173, 178, 638 N.Y.S.2d 405, 408 (1995).

relation back law employs a similar standard as the federal rule."). There is no indication that Ms. Mabry previously omitted the new defendants in bad faith or to gain any unfair advantage. Indeed, she aggressively sought the identities of the defendants she wished to add and filed this motion shortly after receiving the last batch of names from the City. For these reasons, her claims against the new defendants relate back to the date of her First Amended Complaint and are not time-barred.

Relation back is permitted for the 15 wardens and wardens of programs that Ms. Mabry attempted to name as Jane/John Does for the further reason that New York permits the statute of limitations to be tolled "in the event that [the plaintiff] cannot identify a defendant previously named as John Doe, if [she] can demonstrate that [she has] made diligent efforts to do so." Wilson v. City of New York, No. 03 CV 2495, 2006 WL 2528468, at *3 (S.D.N.Y. Aug. 31, 2006); accord Murphy, ___ F. Supp. 2d at ___, 2008 WL 339216, at *3; Laureano, 2007 WL 2826649, at *6; see N.Y. C.P.L.R. §§ 306-b, 1024. That is clearly the case here.

B.   Claims Against Previously Unserved Defendants

          The State defendants object to the issuance of new summonses for defendants McCalla and White, who were named in the First Amended Complaint but not served within 120 days. (DOCS Memo. at

5-6).[7]  Rule 4(m) of the Federal Rules of Civil Procedure provides for dismissal if "a defendant is not served within 120 days after the complaint is filed."  Fed. R. Civ. P. 4(m).  Notwithstanding the 120-day window, "the court must extend the time for service for an appropriate period" if "the plaintiff shows good cause for the failure."  Id.  In this case, the plaintiff asserts that she had good cause for failing to serve McCalla and White because, after confronting difficulty serving these defendants through the U.S. Marshals Service, she relied on a letter from counsel for the State indicating that he would contact Ms. McCalla to obtain her consent for DOCS to accept service on her behalf.  (Plaintiff's Affirmation in Answer to State DOCS Defendant's Opposition to Leave Motion to Amend Her Second Complaint dated Jan. 22, 2008, at 8; Letter of Steven Schulman dated Feb. 28, 2007, at 1).  However, this offer did not include Sergeant White.  Furthermore, notwithstanding counsel's letter, the obligation to serve the defendants ultimately rests with the plaintiff.  When months elapsed without further news, it was incumbent upon Ms. Mabry to follow up.  Now, nearly one year has elapsed, and the plaintiff will not be permitted to circumvent her obligation to serve defendants in a timely manner by filing an amended complaint.  No new summons shall issue with

---

[7] Four of the seven defendants who were not served with the First Amended Complaint remain named in the Second Amended Complaint.  These defendants are Officers Roberson and Lydia Quick of RMSC, and Judith McCalla and Sergeant Thomas White of BHCF.

16

respect to defendants McCalla and White.

      C.   Personal Involvement

The City and State defendants oppose amendment to add new defendants on the additional ground that the amendment would be futile because the plaintiff cannot show that these defendants were personally involved in the alleged constitutional violations. The plaintiff does not explicitly set forth the theories of personal involvement she relies on with respect to each defendant but contends generally that the defendants acted with deliberate indifference to the conditions of confinement that led to her contracting the Hepatitis C virus. (Mabry Reply Aff. at 14).

Permission to amend may be denied as futile if the amendment would not withstand a motion to dismiss pursuant to Rule 12(b)(6). See Oneida Indian Nation, 337 F.3d at 168; Smith v. CPC International, Inc., 104 F. Supp. 2d 272, 274 (S.D.N.Y. 2000). To survive a 12(b)(6) motion, a complaint "does not need detailed factual allegations"; however, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, __ U.S. __, __, 127 S. Ct. 1955, 1964-65 (2007). A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, __ U.S. __, __, 127 S. Ct. 2197, 2200 (2007) (per curiam); Freedom Holdings, Inc. v. Spitzer, 363 F.3d 149, 151 (2d Cir.

2004).  The liberal pleading standard applies with particular force where a plaintiff is pro se or alleges civil rights violations. See McPherson v. Coombe, 174 F.3d 276, 280 (2d. Cir. 1999) (pro se pleadings must be interpreted "to raise the strongest arguments that they suggest") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); see also Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998); Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994).

In order to obtain an award of damages against a defendant in a Section 1983 case, a plaintiff must demonstrate that the individual was personally involved in the constitutional violation. Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).  Liability may not be premised solely on an official's position in the chain of command. Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003).  Rather, the plaintiff must show that: (1) the official participated directly in the violation; (2) the official, after learning of the violation through a report or appeal, failed to remedy the wrong; (3) the official created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the official was grossly negligent in supervising subordinates who caused the unlawful condition or event; or (5) the official exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring.

Back v. Hastings on Hudson Union Free School District, 365 F.3d
107, 127 (2d Cir. 2004) (citing Colon v. Coughlin, 58 F.3d 865, 873
(2d Cir. 1995)); Washington v. Kelly, 03 Civ. 4638, 2004 WL 830084,
at *3 (S.D.N.Y. April 13, 2004).

In order to show personal involvement for a claim that prison
officials failed to protect the plaintiff against an unreasonable
risk of harm under the Eighth Amendment,[8] the plaintiff must
demonstrate that the officials acted with "deliberate indifference"
to a substantial risk of serious harm to inmate health and safety.
Hayes v. New York City Department Of Corrections, 84 F.3d 614, 620
(2d Cir. 1996) (explaining that deliberate indifference includes a
subjective and an objective component).    A defendant "has
sufficient culpable intent if he has knowledge that an inmate faces
a substantial risk of serious harm and he disregards that risk by
failing to take reasonable measures to abate the harm."    Id.
(citing Farmer v. Brennan, 511 U.S. 825, 837-38 (1994); accord
Jackson v. Pataki, No. 95 Civ. 9921, 2001 WL 228136, at *7
(S.D.N.Y. March 7, 2001).   In some circumstances, a factfinder may
conclude that the risk was known to the defendant "from the very

---

[8] Although Ms. Mabry also asserts claims under the Fourteenth
Amendment, I will limit my analysis to her claims under the Eighth
Amendment since the Eighth Amendment provides specific guidance
applicable to harmful conditions of confinement.   See Albright v.
Oliver, 510 U.S. 266, 272 (1994)(where specific constitutional
provision is applicable, conduct complained of must be evaluated in
light of "explicit textual source of constitutional protection"
rather than general guarantee of due process).

fact that the risk was obvious." <u>Farmer</u>, 511 U.S. at 842.

      1.   <u>RMSC Wardens</u>

     The plaintiff asserts that Wardens Eugui, Heard, Sanchez, Figueroa, Sylvester, and Andrews "supervised" the intake reception area, where unsanitary conditions contributed to the spread of disease. (Statement of Claim ("SAC Statement"), attached to SAC, at 1). In her papers, the plaintiff asserts that she orally complained to the wardens about the unsanitary conditions as they made rounds. (Deposition of Sharon Mabry dated Sept. 25, 2007 ("Mabry Dep."), attached as Exh. K to Mabry 1/15/08 Decl., at 122, 130; Mabry Reply Aff. at 15). Furthermore, the plaintiff alleges, one could easily observe syringes with their needles exposed and waste contaminated by bodily fluids overflowing from the garbage in violation of health codes. (SAC Statement at 1). If true, these allegations would be sufficient to establish that the wardens had the requisite state of mind for a deliberate indifference claim.[9] <u>See</u> <u>Curry v. Kerik</u>, 163 F. Supp. 2d 232, 237 (S.D.N.Y. 2001) (declining to dismiss claim where plaintiff alleged defendants were advised of hazardous conditions in showering area via "letters, grievances, and complaints" and failed to remedy the problem). However, this applies only to the wardens to whom she could have

---

   [9] At this time, the defendants do not raise any argument concerning the objective prong of the deliberate indifference analysis -- that the conditions of confinement in fact created a substantial risk of serious harm. (DOCS Memo. at 8 n.6).

spoken: those who held the post when the plaintiff would have been exposed to the conditions in the intake area, i.e., when she entered RMSC, transferred out of RMSC, or had court dates. (Mabry Dep. at 122, 130). Thus, the plaintiff may amend her complaint to name only those wardens.

### 2.   RMSC Wardens of Programs and Beauty Shop Supervisor

The plaintiff asserts that Wardens of Programs Conry, Panagi, Gallagher, Holley, Wilson, Rosato, Holmes, Gunther, Figueroa, and Langston "supervised" the beauty shop (SAC Statement at 1-2), that John Nance was the "civilian" in charge of the shop, and that officers Roberson and Quick supervised the area.[10]   (SAC Statement at 1).  She also alleges that the grooming equipment was improperly disinfected.  (SAC Statement at 2).  At best, this might be enough to establish personal involvement on the part of the individual who had the duty of changing the disinfecting solution or ensuring its efficacy.  It would be reasonable to infer that the individual the City identified as being in charge of the shop, John Nance, was responsible for this function.[11]   Without more, however, the

---

[10] The City objects to the inclusion of Officers Roberson and Quick in the Second Amended Complaint on similar grounds as the other defendants.  However, these officers were named in the plaintiff's First Amended Complaint.  Therefore, they are not new defendants and a motion to amend is not the appropriate procedural vehicle for addressing the City's argument concerning them.

[11] At this stage, the plaintiff is entitled to all reasonable inferences in her favor, Freedom Holdings, 363 F.3d at 151; however, she will need some evidence of Mr. Nance's job

plaintiff cannot show that the wardens were aware of this condition or were otherwise involved in the day-to-day management of the beauty shop.  Therefore, the plaintiff is permitted to amend her complaint to add only Mr. Nance.

### 3.   Medical Clinic Directors

Next, the plaintiff alleges that Drs. Bouzy and Dyer, in addition to Dr. Bailey,[12] oversaw the medical part of the intake area and the RMSC medical clinic.  (SAC Statement at 1).  She alleges that these defendants were responsible for unsanitary conditions in both areas, including the inadequate sterilization of syringes and forceps used for gynecological examinations.  (SAC Statement at 1).  The plaintiff does not clearly state that Drs. Bouzy and Dyer ever examined her, only that they were "assigned" to the clinic on various occasions when she was sick.  (SAC Statement at 1).  Nevertheless, if the conditions described were as ubiquitous and notorious as the plaintiff alleges, they would have been apparent to a medical doctor overseeing daily operations, and there would be some basis for inferring knowledge on the part of the defendants.  The plaintiff may therefore add Drs. Bouzy and Dyer to the action.

---

responsibilities to withstand summary judgment.

[12] Dr. Bailey is not a new defendant in the Second Amended Complaint.

4.   <u>BHCF Deputies of Administration</u>[13]

Finally, the plaintiff alleges that Deputies of Administration Morgan, Hughes, and Casterline supervised several areas of BHCF for administrative purposes.  She alleges that they oversaw the intake area, where staff were not properly trained in disinfecting the nail clippers she used.  (SAC Statement at 2).  In addition, they had responsibility over the medical area, including the dental and gynecological areas frequented by the plaintiff.  (SAC Statement at 2-3).  And, they had responsibility over the mess hall, where the plaintiff asserts that eating utensils were not properly sanitized.  (SAC Statement at 4).[14]  Although Ms. Mabry attaches a number of complaints she lodged regarding unsanitary conditions at BHCF (Exhs. B-E to SAC), none of these predate August 2004, when the plaintiff first tested positive for Hepatitis C.  Thus, they cannot be used to show deliberate indifference to the conditions that caused the plaintiff's illness.  The plaintiff does not point to any other basis for inferring knowledge on the part of these "administrative supervisors."  Thus, leave to amend as to the new

---

[13] This discussion addresses Ms. Mabry's claims against BHCF officials in their individual capacity.  The plaintiff is barred from seeking damages against those defendants in their official capacity by the Eleventh Amendment.  <u>See</u> <u>Davis v. New York</u>, 316 F.3d 93, 101 (2d Cir. 2002); <u>Johnson v. Goord</u>, 01 Civ. 9587, 2004 WL 2199500 at *4 (S.D.N.Y. Sept. 29, 2004).

[14] The plaintiff alleges that the failure to properly sanitize eating utensils contributed to her exposure to Hepatitis A and B, but not to her contracting the Hepatitis C virus.  (SAC Statement at 4).

State defendants is denied.

    C.   <u>Qualified Immunity</u>

The State defendants argue that the new State defendants are entitled to qualified immunity because they are unable to tell from the plaintiff's pleading "what it is they are alleged to have done to violate plaintiff's clearly established rights." (DOCS Memo. at 11). This argument is puzzling. However, since I have dismissed all of the newly named State defendants above because of the plaintiff's failure to allege their personal involvement, I need not reach the question here.

    D.   <u>Prejudice</u>

Finally, the defendants oppose amendment on the grounds that it would cause them undue prejudice. They claim that amendment would delay resolution of a case in which discovery has closed and the defendants are ready to file dispositive motions. (NYC DOC Memo. at 12). Specifically, they note that even if the plaintiff takes no additional discovery, the defendants would likely need to re-depose Ms. Mabry regarding her allegations against the new defendants. (DOCS Memo. at 13).

As a general rule, delay, absent bad faith or prejudice, is not a sufficient basis for denying leave to amend. <u>See</u> <u>Parker v. Columbia Pictures Industries</u>, 204 F.3d 326, 339 (2d Cir. 2000); <u>Block v. First Blood Associates</u>, 988 F.2d 344, 350 (2d Cir. 1993). In determining whether the defendants would be prejudiced by the

amendment, I must consider whether the addition of the proposed
defendants would "(I) require the opponent to expend significant
additional resources to conduct discovery and prepare for trial;
[or] (ii) significantly delay the resolution of the dispute."
Block, 988 F.2d at 350.   The longer the period of unexplained
delay, the lesser the showing of prejudice required of the
nonmoving party. Evans v. Syracuse City School District, 704 F.2d
44, 47 (2d Cir. 1983).   However, if the plaintiff can show a
reason for the delay, "the adverse party's burden of undertaking
discovery, standing alone, does not suffice to warrant denial of a
motion to amend." United States v. Continental Illinois National
Bank & Trust Co. of Chicago, 889 F.2d 1248, 1255 (2d Cir. 1989);
see also Randolph-Rand Corp. of New York v. Tidy Handbags, Inc.,
No. 96 Civ. 1829, 2001 WL 1286989, at *4 (S.D.N.Y. Oct. 24, 2001)
(mere fact that discovery is at its close "does not provide a
reason for denying leave to amend").

Here, amendment will not be unduly prejudicial to the
defendants.  This is not a case where the parties have briefed or
even filed for summary judgment. Cf. McCarthy v. Dun & Bradstreet
Corp., 482 F.3d 184, 202 (2d Cir. 2007) (upholding denial of leave
to amend where defendant had already filed for summary judgment);
Reynolds v. United States, No. 06 Civ. 00843, 2007 WL 3071179, at
*2 (S.D.N.Y. Oct. 19, 2007) (denying leave to amend where summary
judgment had been fully briefed).  Furthermore, the burden on the

defendants of re-deposing Ms. Mabry would not be significant.  See Hampton Bays Connections, Inc. v. Duffy, 212 F.R.D. 119, 123 (E.D.N.Y. 2003)("even if additional discovery is needed, such discovery would not be extensive" because new claim "arises from the same set of facts as the original claims").  Finally, the plaintiff has provided an explanation for her delay: she was waiting for the defendants to identify the defendants she wished to add.  Although the plaintiff could have submitted a Second Amended Complaint in August 2007 adding the names of only some of the new defendants, she could anticipate that the names of the RMSC medical directors would soon be produced.  It was reasonable for her to have waited to receive them before filing a single amended complaint rather than burden the court with multiple motions to amend.

Conclusion

     For the reasons set forth above, the plaintiff's motion is granted in part.  The plaintiff is permitted to amend the complaint to name John Nance, Drs. Bouzy and Dyer, and those RMSC wardens who held that title when Ms. Mabry passed through the intake area at RMSC.  The plaintiff may also remove the five defendants and add the declarations from other inmates.  In all other respects, the plaintiff's motion to amend is denied.  Within 20 days, Ms. Mabry shall serve and file an amended complaint that conforms with this Order.  The Clerk of the Court is directed to issue an amended

summons so that the plaintiff may effect service on the new

defendants.

SO ORDERED.

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           March 7, 2008

Copies mailed this date:

Sharon Mabry
00G0299
Bedford Hills Correctional Facility
247 Harris Road
P.O. Box 1000
Bedford Hills, New York 10507

Janice C. Silverberg, Esq.
Steven D. Weber, Esq.
Assistant Corporation Counsel
City of New York Law Department
100 Church Street
New York, New York 10007

Steven N. Schulman, Esq.
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271