```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
SHARON MABRY,                           : 05 CV 8133 (JSR) (JCF)
                                        :
            Plaintiff,                  :      REPORT AND
                                        :      RECOMMENDATION
    - against -                         :
                                        :
NEW YORK CITY DEPARTMENT OF             :
CORRECTIONS, CITY OF NEW YORK;          :
HECTOR EUGUI; ELIZABETH HEARD;          :
CHRISTY SANCHEZ; RUTH FIGUEROA;         :
GLEN SYLVESTER; JACQUELINE              :
ANDREWS; STEVEN CONRY; PETER            :
PANAGI; MARY ELLEN GALLAGHER;           :
THOMAS HOLLEY; STEVEN WILSON;           :
FRANCES ROSATO; FREDA HOLMES;           :
VICKIE GUNTHER; SANDRA LANGSTON;        :
JOHN NANCE; C.O. ___ ROBERSON;          :
C.O. ___ LYDIA QUICK; G. BAILEY;        :
DR. MARIA BOUZY; DR. DYER; STATE        :
OF NEW YORK; ELAINE LORD; C.            :
LEMMERMAN; and DR. LORI GOLDSTEIN,      :
                                        :
            Defendants.                 :
- - - - - - - - - - - - - - - - - - - -:
```
TO THE HONORABLE JED S. RAKOFF, U.S.D.J:

   This action involves the plaintiff's infection with hepatitis. Sharon Mabry brings this case pro se pursuant to 42 U.S.C. § 1983, claiming that she contracted hepatitis due to unsanitary conditions and practices at the Rose M. Singer Center for Women at the Rikers Island Correctional Facility ("Rikers"), which is part of the New York City correctional system, and at the Bedford Hills Correctional Facility ("Bedford"), a New York State prison. She has asserted claims against the New York City Department of Corrections and numerous specific individuals working at both Rikers and Bedford. State Defendants Gail Bailey Wallace, Elaine

1

A. Lord, Lori Goldstein, and Cheree Lemmerman (the "State Defendants") now move for summary judgment; City Defendants Dr. Dyer, John Nance, Correction Officer Quick, and the City of New York (the "City Defendants") do likewise.[1]  For the reasons outlined below, the defendants' summary judgment motions should be granted.

Background

    A. Facts

Following her arrest for murder, Sharon Mabry was detained at Rikers beginning on January 12, 1997.  (State Defendants' Local Rule 56.1 Statement of Material Facts Which Are Not in Dispute ("State Facts"), ¶¶ 2, 7, 12).  She was convicted and sentenced on February 17, 2000 (City Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts ("City Facts"), ¶ 2; Inmate New History Inquiry, attached as Exh. E to Declaration of Steven D. Weber dated Sept. 29, 2008 ("Weber Decl.")) and then transferred to Bedford on March 8, 2000, where she continues to reside.  (State Facts, ¶¶ 2, 16; Plaintiff's Response to City Defendants' Motion for Summary Judgment ("Pl. City Opp. Memo.") at 4).

Ms. Mabry had never been tested for hepatitis of any type

---

[1] It appears that all other defendants named in the Second Amended Complaint (the "SAC") have not been served, have passed away, have been dismissed from the case, or are otherwise no longer parties to this action.  The plaintiff has explicitly withdrawn her claim against Gail Bailey Wallace.  (Plaintiff's Response to State Defendants' Motion for Summary Judgment ("Pl. State Opp. Memo.") at 2).

prior to her incarceration at Rikers. (State Facts, ¶ 12; Plaintiff's Affirmation in Opposition to State Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts ("Pl. State Facts Opp."), ¶ 8). According to the defendants, she underwent a routine physical examination at Rikers on January 13, 1997, which the City Defendants assert "did not include blood tests for any type of hepatitis." (Declaration of Jason Hershberger, M.D. ("Hershberger Decl."), ¶ 5; Medical records attached as Exh. B to Weber Decl., at SM 0420 and SM 0421). Ms. Mabry tested negative for hepatitis B surface antigen on March 3, 1997 (Medical records, attached as Exh. B to Weber Decl., at SM 0424; Medical records, attached as Exh. D to Weber Decl.; Hershberger Decl., ¶ 6; State Facts, ¶ 13), indicating that she did not have an active hepatitis B infection on that date. (City Facts, ¶ 6; Hershberger Decl., ¶ 6; State Facts, ¶ 13). The plaintiff was not tested for hepatitis A or C during her time at Rikers. (City Facts, ¶ 7; State Facts, ¶ 13).

Ms. Mabry interprets her medical records differently, arguing that they indicate that she was "disease free," had not been "exposed" to hepatitis of any type, and "did not have any [hepatitis] antibodies" at the time. (Plaintiff's Affirmation in Opposition to City Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts ("Pl. City Fact Opp."), ¶ 2). She also claims that a test for "HCV" on March 3, 1997 was a test for hepatitis (presumably the "C" strain) and that results of "94.9" indicate no

3

disease.  (Pl. City Facts Opp., ¶ 2; Medical records, attached as Exh. D to Weber Decl.; Deposition of Sharon Mabry dated Sept. 25, 2007 ("Mabry 9/25/07 Dep."), attached as Exh. A to Declaration of Steven Schulman dated Sept. 29, 2008 ("Schulman Decl."), at 43).  The defendants deny that this is a hepatitis test, the results of which would be reported as "positive" or "negative," not as a numeric amount; according to the defendants, the test designation is a typographical error, and the test actually performed was "MCV," or Mean Corpuscular Volume, which measures the average size of red blood cells.  (Hershberger Decl., ¶ 8 & n.2; City Facts, ¶ 7).

No additional hepatitis tests of any type were conducted until after Ms. Mabry's transfer from Rikers to Bedford.  Blood samples taken from the plaintiff on March 10, 2000 tested positive for hepatitis B surface antibodies and negative for hepatitis B surface antigens.  (Medical records, attached as Exh. C to Weber Decl., at 00256; State Facts, ¶ 17).  According to the defendants, this indicates that Ms. Mabry did not have an active hepatitis B infection, but that she had been exposed to the hepatitis B virus at some time in the past.  (Hershberger Decl., ¶ 7; State Facts, ¶ 17).  She was not tested for hepatitis A or C at that time.  (State Facts, ¶ 17).  However, Ms. Mabry cites a 2004 news article in DOCS Today, a publication of the state correctional system, to argue that testing for hepatitis C was part of the routine medical

4

procedure for new inmates at state facilities in 2000, and thus she must have been tested for hepatitis C antibodies and found not to be infected. (Pl. State Fact Opp., ¶ 12; Page 9 of article from September 2004 issue of DOCS Today ("DOCS Today article"), attached as Exh. H to Declaration of Sharon Mabry dated Nov. 30, 2008 ("Mabry Decl.")). The State Defendants respond that, in fact, the policy for new inmates in 2000 was to test routinely for hepatitis B, but not to test for hepatitis C "in the absence of recognized risk factors." (State Facts, ¶ 17).

Ms. Mabry was next tested for hepatitis after her liver function was found to be abnormal for the first time. (State Facts, ¶ 19; Medical records attached as Exh. I to Mabry Decl., at 00173). A sample of Ms. Mabry's blood was taken on May 11, 2004. (State Facts, ¶ 19; Medical records, attached as Exh. A to the Declaration of Dr. Lori Goldstein dated September 25, 2008 ("Goldstein Decl."), at 00278). She tested negative for "Hepatitis A, IgM antibody," and positive for "Hepatitis A, TOTAL" antibody, indicating that while Ms. Mabry had been infected with hepatitis A in the past, she did not currently have an infection. (State Facts, ¶ 19; Medical records, attached as Exh. A to Goldstein Decl., at 00278). For hepatitis B, she tested positive for surface antibody and core antibody, but negative for antigen, indicating that she had either been exposed to or infected with hepatitis B in the past, but did not currently have an active infection. (State

Facts, ¶ 19; Medical records, attached as Exh. A to Goldstein Decl., at 00278, 00271). Finally, Ms. Mabry's test for hepatitis C virus antibody was positive, indicating an active hepatitis C infection. (State Facts, ¶ 19; Medical records, attached as Exh. A to Goldstein Decl., at 00278, 00271). Further testing and a liver biopsy confirmed that Ms. Mabry has active chronic hepatitis C. (State Facts, ¶ 19; Pl. State Facts Opp., ¶ 14).

From December 2004 to November 2005, Ms. Mabry was treated for hepatitis C with the drugs interferon and ribavirin. (State Facts, ¶ 20). However, the treatment was unsuccessful and Ms. Mabry continues to carry a viral load of hepatitis C. (State Facts, ¶ 20; Pl. State Facts Opp., ¶ 14).

The plaintiff argues that she contracted hepatitis C and was exposed to hepatitis A and B as a result of unsanitary conditions at Rikers and Bedford. Specifically, she contends that she was exposed to hepatitis B and C at Rikers as a result of the medical clinic's use of syringes that had been left exposed on exam tables; the clinic's use of speculums that were improperly sterilized between uses on multiple patients; the failure to remove medical waste, including blood and other bodily fluids, from waste receptacles in the medical clinic's "holding pens"; and the beauty salon's provision of improperly sanitized toenail clippers. (SAC at 1-4; Pl. City Opp. Memo. at 2). At Bedford, Ms. Mabry claims she was exposed to hepatitis A and C through the provision of

6

unsanitary toenail clippers, combined with a policy requiring inmates to cut their nails with the clippers upon entry to Bedford; reuse of unsanitary speculums during gynecological exams; use of unsterile podiatry equipment to treat an ingrown toenail; and inadequately sanitized eating utensils in the prison mess hall. (SAC at 1-4; Pl. State Facts, ¶ 15).

The defendants argue that Ms. Mabry contracted hepatitis C and was exposed to hepatitis A and B prior to her 1997 incarceration. They point to the absence of any evidence that Ms. Mabry was infected with hepatitis A or B while imprisoned, and they submit that a person infected with hepatitis C may not show symptoms for "ten to twenty years or sometimes longer," making it possible for hepatitis C exposure before January 1997 to have resulted in infection by May 2004. (Hershberger Decl., ¶ 10). They argue that Ms. Mabry's high risk behaviors prior to incarceration, such as prostitution (including sexual intercourse with multiple partners resulting in four abortions) and crack cocaine and heroin use,[2] increase the likelihood of such exposure. (State Facts, ¶¶ 8-10; City Facts, ¶¶ 4-5).

B. Procedural History

After she was diagnosed with a hepatitis C infection and prior exposure to hepatitis A and B, Ms. Mabry filed formal grievances

---

[2] Ms. Mabry admits to narcotics use, but denies having ever taken any drug intravenously. (Mabry 9/25/07 Tr. at 109-10).

7

complaining that she contracted hepatitis as a result of the negligence of employees at Rikers and Bedford. (SAC at 5-6). She filed this suit in the Eastern District of New York on August 24, 2005, and it was transferred to this Court in September 2005. The Second Amended Complaint was filed on March 18, 2008. The City and State Defendants have all now moved for summary judgment.[3]

Discussion

    A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002); Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co., 189 F.3d 208, 214 (2d Cir. 1999). The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The opposing party then must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Where the non-movant fails to make "a

---

[3] There has been a dispute regarding whether or not the plaintiff's submission of sur-replies was proper. This issue is moot, as neither the sur-replies nor any later submissions add material information that would alter the result here.

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. Celotex, 477 U.S. at 322.

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U.S. at 249 (citation omitted), and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. Id. at 249-50. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288 (1968)).

Where a litigant is pro se, her pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

9

Nevertheless, proceeding <u>pro se</u> does not relieve a litigant from the usual requirements of summary judgment, and a <u>pro se</u> party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." <u>Lee v. Coughlin</u>, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting <u>Carey v. Crescenzi</u>, 923 F.2d 18, 21 (2d Cir. 1991)); <u>accord</u> <u>Gittens v. Garlocks Sealing Technologies</u>, 19 F. Supp. 2d 104, 110 (W.D.N.Y. 1998).

In addition, the court's review of the record is limited to facts that would be admissible at trial. Rule 56(e) states that affidavits in support of or against summary judgment shall "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(e). Accordingly, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." <u>Raskin v. Wyatt Co.</u>, 125 F.3d 55, 66 (2d Cir. 1997).

B.  <u>Prisoner Rights Under Section 1983</u>

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." <u>Baker v. McCollan</u>, 443 U.S. 137, 145 n.3 (1979). Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999).

To establish a violation of 42 U.S.C. § 1983 based on unconstitutionally inadequate conditions of confinement,[4] a prison inmate must show that the defendant was deliberately indifferent to an excessive risk to inmate health or safety. See Farmer v. Brennan, 511 U.S. 825, 834-35 (1994); cf. Estelle v. Gamble, 429 U.S. 97, 104 (1976) (stating that for inadequate medical care claims, the plaintiff must show the defendant was deliberately indifferent to her serious medical needs). Such a claim arises under the Eighth Amendment's prohibition on "cruel and unusual punishment," which includes a ban on punishments that "involve the

---

[4] The State Defendants argue for summary judgment based on the plaintiff's failure to present sufficient evidence to support a claim of inadequate medical care. (State Defendants' Memorandum of Law in Support of Motion for Summary Judgment at 4-6). However, Ms. Mabry is not complaining of the care she received for hepatitis, but rather the conditions that she claims caused her to contract it. Therefore, this case is better analyzed as one involving claims of unconstitutional conditions of confinement, as the City Defendants have argued. (City Defendants' Memorandum of Law in Support of The Motion for Summary Judgment at 4-9). In any event, the relevant legal analysis in this case is the same under either argument.

11

unnecessary and wanton infliction of pain." Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002)(quotation marks and citation omitted); see also Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (inadequate medical care); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (same). The deliberate indifference standard includes two prongs, one objective and one subjective. Institutional conditions must be so severe as to "violate contemporary standards of decency" in order to meet the objective prong. Phelps, 308 F.3d at 185. Prisoners cannot be deprived of basic human needs, including medical care and reasonable safety, or be exposed to excessive risk of serious damage to their future health. Id. The subjective "deliberate indifference" prong considers whether the prison official had a sufficiently culpable state of mind. Id. at 185-86; see also Farmer, 511 U.S. at 835; Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003) (medical need case).

A plaintiff who was imprisoned prior to trial may also assert a section 1983 challenge to the conditions of her confinement under the Fourteenth Amendment for the period before conviction. The analysis is similar to that under the Eighth Amendment. See Benjamin v. Frasier, 343 F.3d 35, 49-50 (2d Cir. 2003). Under the Fourteenth Amendment, a defendant will be liable for "deliberate indifference to inmate welfare." Id. at 50. A plaintiff claiming deliberate indifference to inadequate environmental conditions must

show "actual or imminent harm"; "[a] healthy inmate cannot sustain a claim of constitutional violation because of the inadequacy of the prison infirmary." Id. at 50-51 & n.17 (quotation marks omitted).

C. Causation[5]

As with any tort, a plaintiff asserting a claim of unconstitutional conditions of confinement must demonstrate a causal relation between the harm she suffered and the defendant's action or inaction. See Barnes v. Anderson, 202 F.3d 150, 158 (2d Cir. 1999) (finding that "[c]ivil actions brought under § 1983 . . . serv[e] primarily the tort objective of compensation," thus defendant's actions or inactions must proximately cause plaintiff's injury). This requires establishing both that the defendants' actions were generally capable of causing the type of harms suffered by the plaintiff and that in this specific instance they did in fact cause the injuries. Amorgianos v. National Railroad Passenger Corp., 303 F.3d 256, 268 (2d Cir. 2002). Where "the nexus between the injury and the alleged cause would not be obvious to the lay juror," expert testimony is required to establish the connection between the defendant's action or inaction and the harm suffered by the plaintiff. Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004); see also Barnes, 202 F.3d at

---

[5] The defendants have moved for summary judgment on a variety of grounds. However, Ms. Mabry's failure to present evidence of causation is fatal to all of her claims, and the defendants' other arguments therefore need not be addressed.

13

159 (requiring expert medical testimony to demonstrate cause of injury "because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person").

In the current case, Ms. Mabry has asserted claims for deliberate indifference to unconstitutional conditions of confinement against both the City and State Defendants under the Eighth Amendment, and against the City Defendants under the Fourteenth Amendment.

### 1. Hepatitis C

Ms. Mabry claims that she contracted hepatitis C from unsanitary conditions in the medical clinic, beauty shop, and mess hall in prison. (SAC at 1-5). She complains of nail clippers, speculums (used during gynecological exams), and rotating blades (used in podiatry) being reused on different inmates without adequate sterilization. (SAC at 1-5; Pl. State Facts, ¶¶ 16-32; Pl. City Facts, ¶¶ 22-40). While her testimony and the other evidence she has presented might create an issue of material fact as to whether at least some of these conditions can generally cause hepatitis C exposure and infection, a reasonable jury could not find by a preponderance of the evidence that she actually did contract hepatitis C by any of these means.

The first time Ms. Mabry was tested for hepatitis C was in May 2004. (Medical records, attached as Exh. A to Goldstein Decl., at

00278, 00271). She was tested after exhibiting abnormal liver function and yellowish colored eyes. (State Facts, ¶ 19; Pl. State Opp. Facts, ¶ 14; Medical records, attached as Exh. A to Goldstein Decl., at 00173). However, the unrebutted medical evidence in this case indicates that it may be twenty years or more after infection before an infected individual begins showing symptoms. (Hershberger Decl., ¶¶ 10-12; Federal Bureau of Prisons, <u>Guidelines for the Prevention and Treatment of Viral Hepatitis</u>, October 2005 ("FBP Hepatitis Guidelines"), attached as Exh. G to Mabry Decl., at 21; Centers for Disease Control and Prevention, <u>Prevention and Control of Infections with Hepatitis Viruses in Correctional Settings</u> (Jan. 24, 2003), attached as Exh. D to Goldstein Decl., at 6). Since Ms. Mabry had only been imprisoned for seven years at that time, it cannot be determined based on the chronology of test results alone whether she contracted hepatitis C in prison or prior to her incarceration. Dr. Hershberger, the defendants' medical expert, found "a strong likelihood" that Ms. Mabry contracted hepatitis C from high risk activities prior to entering prison. (Hershberger Decl., ¶ 12).

Ms. Mabry asserts that, in fact, she was tested for hepatitis C twice prior to May 2004. She claims that she tested negative for hepatitis C upon entry to both Rikers and Bedford. (Pl. State Facts, ¶¶ 9, 12; Pl. City Facts, ¶¶ 3-4, 10-12, 14; Pl. State Opp. Memo. at 2; Pl. City Opp. Memo. at 30-31). However, the evidence

15

in this case does not support either proposition.  First, upon arrival at Rikers, Ms. Mabry's medical records show that the only hepatitis test she underwent indicated she was negative for hepatitis B infection.  Ms. Mabry insists that an "HCV" test done at the same time as the hepatitis B test shows she did not have hepatitis C.  (Pl. City Fact Opp., ¶ 2; Medical records, attached as Exh. D to Weber Decl. (indicating the results of a March 3, 1997 "HCV" test as "94.9"); Mabry 9/25/07 Tr. at 43).  However, this interpretation of the "HCV" test results is unwarranted.  The defendants' uncontradicted expert evidence establishes that hepatitis test results are given as "positive" or "negative," not in numeric form.  (Hershberger Decl., 8 & n.2; City Facts, ¶ 7). The "HCV" result is also inconsistent with the manner in which the hepatitis results were recorded in connection with every other hepatitis test in this case.  Ms. Mabry's contrary personal opinion concerning these test results is not competent evidence and is not sufficient to create a disputed issue of fact.

The plaintiff argues she was next tested for hepatitis C upon her transfer to Bedford.  She offers as evidence a 2004 news article that stated that hepatitis C testing was part of Bedford's admission protocol.  (DOCS Today article).  She reasons that she must have been tested, and that since she was not notified of the results, the test must have come back negative.  (Pl. State Fact Opp., ¶ 12; DOCS Today article).  However, this article does not

show that hepatitis C testing was routine for new admissions four years earlier. To the contrary, the State Defendants have submitted proof that in 2000, new arrivals were not routinely tested for hepatitis C (State Facts, ¶ 17; Goldstein Decl., ¶ 21), and there are no medical records in evidence indicating that any hepatitis C test was conducted on Ms. Mabry at that time. Thus, the evidence is also insufficient for a reasonable jury to find that Ms. Mabry tested negative for hepatitis C in 2000.

Furthermore, even if Ms. Mabry could show she had tested negative for all types of hepatitis upon entry to Rikers or Bedford, there is no competent expert evidence linking her infection to any specific causal factor for which any particular defendant was responsible. Without expert evidence linking Ms. Mabry's illness to any item on her laundry list of potential paths of infection, Ms. Mabry cannot show that it is more likely than not that any given defendant's actions or inactions are responsible for her injuries. See, e.g., Green v. McAllister Brothers, Inc., No. 02 Civ. 7588, 2005 WL 742624, at *11 (S.D.N.Y. March 25, 2005) (requiring, in toxic tort case, showing of specific causation that toxin at issue was more likely than not cause of plaintiff's injury).

### 2. Hepatitis A and B

Ms. Mabry also cannot show that any of the City or State Defendants caused her to contract hepatitis A or B. The current

17

presence of antibodies against hepatitis A and B in her system is not harmful in any way (Mabry 9/25/07 Dep. at 138; Deposition of Sharon Mabry dated July 15, 2008, attached as Exh. B to Schulman Decl., at 177; Medical records, attached as Exh. A to Goldstein Decl., at 00344 (characterizing Ms. Mabry as "hep A & B immune" on June 21, 2004)), and thus fails the objective prong of the analysis; the only harm Ms. Mabry could be alleging is that these antibodies potentially indicate past hepatitis A and B infections. (Hershberger Decl., ¶¶ 4, 7; City Facts, ¶ 8, 10-11).

However, even if Ms. Mabry did suffer harm in the past from hepatitis A and B, the absence of evidence of specific causation is again fatal to her claim.[6] There is no evidence that she contracted either infection during her incarceration at Rikers or Bedford rather than prior to her incarceration. (See Hershberger Decl., ¶¶ 4, 7). Ms. Mabry has failed to offer the opinion of any medical expert or other competent evidence to show that she likely was infected in prison. Thus, a reasonable jury could not find the City and State Defendants liable for Ms. Mabry's claims regarding hepatitis A and B.

Conclusion

For the reasons set forth above, I recommend that the

---

[6] As is the case for hepatitis C, general causation would not be an impediment here, as Ms. Mabry has presented evidence sufficient to create an issue of material fact that at least some of the alleged unsanitary conditions were potential vectors for hepatitis A and B transmission. (FBP Hepatitis Guidelines at 1, 4).

18

defendants' motions for summary judgment be granted and the complaint be dismissed. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, Room 1340, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

*[signature: James C. Francis IV]*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           March 12, 2009

Copies mailed this date to:

Sharon Mabry
00G0299/Bldg. # 114A-10
Bedford Hills Correctional Facility
247 Harris Road
P.O. Box 1000
Bedford Hills, New York  10507

Steven N. Schulman, Esq.
Daniel Schulze, Esq.
Assistant Attorneys General
120 Broadway, 24th Floor
New York, New York 10271

Steven Weber
Assistant Corporation Counsel
100 Church Street, Room 2-185
New York, New York 10007

20